UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LISA T.

                             **Plaintiff,**                             22-CV-06082-HKS

v.

**COMMISSIONER OF SOCIAL SECURITY,**

                             **Defendant.**
_____

## DECISION AND ORDER

As set forth in the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #12.

## BACKGROUND

On July 24, 2019, plaintiff, at the age of 51, protectively filed an application for a period of disability and disability insurance benefits, pursuant to Title II of the Social Security Act. Dkt. #5, pp. 204-205 .[1] Plaintiff originally alleged an onset date of October 18, 2018, but it was later amended to June 6, 2019. Dkt. #5, pp. 18, 41, 45-46, 229.

In a Disability Report filed on December 11, 2019, plaintiff alleged she was disabled due to heart disease, coronary artery disease, hyperlipidemia, obesity, high

---

[1] Record citations use the page number(s) generated by the Court's electronic filing system.

~ 1 ~

blood pressure, and gastroesophageal reflux disease. Dkt. #5, p. 233. She reported that she was 5' 3" tall and weighed 203 pounds. *Id.*

Plaintiff's claim was denied initially on February 14, 2020, Dkt. #5, pp. 127-138, and on reconsideration on March 17, 2020. Dkt. #5, pp. 140-151.

Plaintiff requested a hearing, and a telephonic hearing was held on February 10, 2021 before Administrative Law Judge ("ALJ") Brian Kane. Dkt. #5, pp. 34-72. Plaintiff appeared with counsel. *Id.*

Upon examination by the ALJ, plaintiff testified that she was 52 years old and that, from 2001 to 2019, she worked as a secretary at Monroe Community College ("MCC"). Dkt. #5, p. 42, 46. She had also previously worked in two other administrative assistant positions. Dkt. #5, p. 48.

The ALJ then heard testimony from Elaine Cogliano, a Vocational Expert ("VE"). Dkt. #5, p. 49. The VE testified that plaintiff's past positions as a secretary were classified as skilled sedentary positions, with one performed at the medium exertional level due to lifting requirements. Dkt. #5, pp. 50-51.

The ALJ then asked the VE, if an individual could perform at a range of sedentary or light work, whether any of plaintiff's past work would be available. Dkt. #5, p. 51.  The VE said all past positions would be available. *Id.*

Plaintiff's counsel then asked the VE if an individual with the same age, education, and work experience as plaintiff was limited to simple tasks, whether she could perform her past work. Dkt. #5, p. 52. The VE stated that she could not. *Id.*

Next, the ALJ asked the VE if a person who could perform a range of light work but was limited to simple tasks could perform other jobs. *Id.* The VE testified that the person could perform the jobs of sorter, furniture rental clerk, and order clerk. *Id.*

Plaintiff's counsel then asked the VE what the acceptable number of breaks, beyond regularly scheduled breaks, the person could take before she would be unable to maintain full-time employment. Dkt. #5, p. 53. The VE responded that an employer would allow 5-6 minutes every hour to get a drink or use the restroom, which equates to approximately 10% of the workday for an unskilled position. *Id.* Anything more than that would eliminate all work. *Id.*

Similarly, the VE testified that off-task behavior would be limited to approximately 10% for an unskilled position and 4% for a skilled position. Dkt. #5, pp. 53-54. Finally, as to absenteeism, the VE testified that, for an unskilled position, an employer would tolerate no more than one absence per month. Dkt. #5, p. 54.

Upon examination by her attorney, plaintiff testified that she left her position at MCC in October 2018 due to her longstanding heart condition. Dkt. #5, p. 55. In

November 2018, she had triple bypass surgery, but after she recovered, she returned to work on a part-time basis in February 2019. *Id.* She started at two days a week and increased to three days a week in April 2019. *Id.*

However, plaintiff testified that she could not keep up with the work; she could not remember things and was making mistakes; her heart would race; and her blood pressure would go up. Dkt. #5, p. 56. She has not worked since June 2019. *Id.*

Plaintiff then testified that most days she is very tired. She will get up in the morning and "putter around" and then lie down again. *Id.* She takes several medications for her heart and blood pressure. *Id.* The medications cause side effects such as dizziness, confusion, and short-term memory loss. Dkt. #5, p. 57. She asked her doctor about these problems, but he told her she had to continue taking the medicines. *Id.*

The ALJ resumed questioning plaintiff, and plaintiff further testified that she cannot handle stress at all and that it affects her mentally and physically. Dkt. #5, p. 59. Her blood pressure goes up and her heart starts racing. *Id.*

The ALJ then asked plaintiff if she had lost any weight, and she testified that she was taking a water pill and had lost 6-15 pounds. *Id.*

The ALJ next asked about medical records which stated that, in February 2020, plaintiff reported that she was dieting and exercising and was able to walk for a

long time without difficulty. Dkt. #5, p. 60. Plaintiff states that she had always been dieting, she had not walked for hours at a time, and the note might have been referring to when she was still working. *Id.*

Next, the ALJ inquired about household chores, and plaintiff testified that she has a person come in once a month; her husband and daughter do all the heavy lifting; she can wipe down counters and dust; and they share the cooking. Dkt. #5, pp. 60-61. Her husband mows the lawn, and she sits outside when it is not too hot. Dkt. #5, p. 61.

Plaintiff also testified that they had not been socializing much due to Covid because she is at high risk due to her heart condition and weight. Dkt. #5, pp. 61-62.

Upon reexamination by her counsel, plaintiff testified that she had recently been experiencing problems with her right arm. Dkt. #5, p. 62-63. The ALJ then asked plaintiff what her problem was, and plaintiff said she has tendinosis, and she may need shots, a brace, or surgery. Dkt. #5, pp. 63-64. Plaintiff testified that she had discussed this with her primary care provider. *Id.*

The ALJ pointed out that when plaintiff saw the SSA examiner in January 2020, she did not complain about any arm problems, and the examiner did not note any. Dkt. #5, p. 64. Plaintiff responded that the examiner was "in and out very quickly," and they did not say "more than 3 or 4 words to each other." *Id.*

On February 26, 2021, the ALJ issued an unfavorable decision finding that plaintiff was not disabled. Dkt. #5, pp. 14-33. The Appeals Council denied plaintiff's request for review on January 7, 2022, Dkt. #5, pp. 5-10, and this action followed.

## DISCUSSION AND ANALYSIS

### Legal Standards

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20

C.F.R. § 416.920(a). At step one, the claimant must demonstrate that she is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that she has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education, and work experience. 20 C.F.R. § 416.920(g).

Here, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since June 6, 2019, the amended alleged onset date; (2) plaintiff has the severe impairments of coronary artery disease and obesity;  (3) plaintiff's impairments do not meet or medically equal any listed impairment; (4) plaintiff has the RFC to perform light work[2] and

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, an individual must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b).

is limited to simple tasks;  (5) plaintiff is unable to perform past relevant work; (6) considering plaintiff's age, education, work experience, and RFC, she is able to perform the occupations of sorter, furniture retail clerk, and order clerk; and (7) plaintiff has not, therefore, been under a disability within the meaning of the SSA since June 6, 2019. Dkt. #5, pp. 20-28.

Pursuant to the *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), applicable to claims filed on or after March 27, 2017, the Commissioner is no longer required to afford any specific evidentiary weight to medical opinions, but is obligated to consider all medical opinions and evaluate their persuasiveness based on the following five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, with particular importance placed upon consistency and supportability. *Jacqueline L. v. Comm'r of Soc. Sec*, 515 F. Supp.3d 2, 7 (W.D.N.Y. 2021) (citing 20 C.F.R. § 416.920c(a) & (c)). To allow a reviewing court to trace the path of an ALJ's reasoning, an ALJ is required to explain their consideration of the supportability and consistency factors by pointing to specific evidence in the record to support the ALJ's findings regarding medical opinions. *Id.* (citing 20 C.F.R. § 416.920c(b)(2)).

With respect to supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the medical findings will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(1))*.* Similarly, with respect to consistency, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinions will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(2))*.* Supportability focuses on the fit between medical opinion offered by the source and the underlying evidence presented by the source to support that opinion, while consistency focuses on how well a medical source opinion is supported by the entire record. *Rosario v. Comm'r of Soc. Sec*, 20 Civ. 7749, 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022). "Even though ALJs are no longer directed to afford controlling weight to treating source opinions – no matter how well supported and consistent with the record they may be – the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating sources] opinion.'" *Id.* (quoting *Shawn H. v. Comm'r of Soc. Sec.*, Civil Action No. 2:19-cv-113, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020)) (alteration in original).

### **Challenge to the ALJ's Decision**

Plaintiff's sole challenge to the ALJ's decision is that, in formulating plaintiff's RFC, he did not properly explain why he found the opinions of plaintiff's primary care provider, Dr. Josephine Ellis, not persuasive. Dkt. #7-1, p. 8.

Dr. Ellis completed physical and mental residual functional capacity questionnaires dated August 28, 2020. Dkt. #5, pp. 812-816, 818-823.

In the physical questionnaire, Dr. Ellis stated that plaintiff's prognosis was "good." Dkt. #5, p. 812. Nonetheless, she opined that plaintiff had severe limitations: she was incapable of even low stress jobs; her symptoms would "frequently" interfere with the attention and concentration needed to perform even simple work tasks; she could only sit or stand for 20 minutes at a time; she could sit or stand for less than two hours in an eight-hour workday; she would need two twenty-minute-long breaks every hour; in a sedentary job, plaintiff would need to elevate her legs above her heart for half the day; she could "never" lift even less than ten pounds; she could "never" look down, turn her head, look up, hold head in a static position, twist, stoop, couch/squat, climb ladders or stairs; she could only use her hands, fingers, and arms for 10% of the workday; and she would be absent from work more than four days per month. Dkt. #5, pp. 812-815.

The ALJ noted that "[t]hese restrictive limitations appear in a check-the-box and fill-in-the-blank form with little explanation, and that there was "little, if any, evidence" to support such limitations. Dkt. #5, p. 25. As examples, he cited hospital records prior to plaintiff's November 2018 bypass surgery reflecting that she had full range of motion in her neck, Dkt. #5, pp. 25, 356, and a consultative exam on January 23, 2020, during which plaintiff exhibited 5/5 strength in her upper and lower extremities and 5/5 bilateral grip strength. Dkt. #5, pp. 25, 756. Dkt. #5.

In her mental questionnaire, Dr. Ellis opined that plaintiff had "severe" anxiety, fatigue, and was "unable to handle stress." Dkt. #5, p. 818. In the check-the-box

portion of the questionnaire, Dr. Ellis opined that plaintiff exhibited decreased energy; difficulty thinking or concentrating; recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress; disorientation to time and place; perceptual or thinking disturbances; flight of ideas; memory impairment; sleep disturbance; and oddities of thought, perception, speech, or behavior. Dkt. #5, p. 819.

In the section titled "Mental Abilities and Aptitudes Needed to do Unskilled Work," Dr. Ellis opined that plaintiff was "unable to meet competitive standards" in fifteen out of sixteen areas. Dkt. #5, p. 820. Similarly, she opined that plaintiff was "unable to meet competitive standards" in all categories under "Mental Abilities Needed to do Semiskilled and Skilled Work." Dkt. #5, p. 821. Third, under "Mental Abilities and Aptitude Needed to do Particular Types of Jobs," Dr. Ellis opined that plaintiff was "seriously limited" in two of the five categories and "unlimited or very good" in the other three. *Id.*

Finally, Dr. Ellis opined that plaintiff would be absent more than four days per month, and she was not capable of engaging in full-time competitive employment on a sustained basis. Dkt. #5, pp. 822-823.

The ALJ also found these opinions unpersuasive. Dkt. #5, p. 25. He noted that he had determined at step two—in a lengthy analysis which plaintiff does not now challenge—that plaintiff does not suffer from a severe mental impairment. *Id.* He also

observed that Dr. Ellis is not a psychiatrist, psychologist, or mental healthcare professional. *Id.*[3]

Before reaching the RFC, the ALJ also considered plaintiff's treatment records which showed, *inter alia*, that in a cardiac follow-up appointment on September 16, 2019, she reported to the doctor that she was "doing well," she was "exercising and dieting," and she denied "any symptoms of chest pain/pressure, shortness of breath, palpitations, orthopnea, and PND." Dkt. #5, pp. 23, 321.[4]

During an appointment with Dr. Ellis on October 21, 2019, plaintiff reported that, after her heart medications were adjusted, she was doing much better, and she reported no chest pains or palpitations. Dkt. #5, pp. 23, 318. Dr. Ellis noted that plaintiff had a normal heart rate and regular rhythm, and she directed plaintiff to return in three months. Dkt. #5, p. 319.

The ALJ also noted that, in February 2020, plaintiff reported to her cardiologist that she was "doing well," she had lost weight, she was exercising and dieting,

---

[3] The record reflects that the ALJ sent a letter to Dr. Ellis dated October 7, 2020, in which he noted the lack of support in the medical records—including her own treatment notes—for her opinions, and he requested that she provide further explanation for her conclusions. Dkt. #5, pp. 825-826. Dr. Ellis returned the letter on October 16, 2000, with a handwritten notation stating, "Nothing further to add." *Id.*

[4] This treatment note also states that plaintiff told the doctor she was able to "walk for hours without difficulty." Dkt. #5, p. 321. In her hearing testimony, plaintiff stated that she had not been walking "for hours." Dkt. #5, p. 60. Given the overall record, the Court does not find this discrepancy material.

and she denied any symptoms of chest pain/pressure, shortness or breath, or palpitations. Dkt. #5, pp. 23, 842.

The ALJ also considered various medical opinions. On January 23, 2020, plaintiff underwent a physical examination with Dr. Raquel Benchoam-Ravid. Dkt. #5, pp. 754-757. Of note, plaintiff reported that she had shortness of breath due to stress. Dkt. #5, p.754. Dr. Benchoam-Ravid thus recommended that plaintiff avoid "moderate or greater exertion" due to her shortness of breath. Dkt. #5, p. 757.

The ALJ found this opinion unpersuasive because plaintiff's treatment records showed that she had denied shortness of breath, and it was unclear what "moderate or greater exertion" meant. Dkt. #5, p. 24. Nonetheless, he explained that he had accounted for such a restriction by limiting plaintiff to light work. *Id.*

Next, the ALJ considered the opinion of Dr. Stephen Farmer, a psychiatrist who examined plaintiff on January 23, 2020. Dkt. #5, pp. 24, 749-751. Plaintiff reported symptoms of depression, which she attributed to dealing with ongoing medical problems, as well as anxiety. Dkt. #5, p. 749. Plaintiff also reported that she was "able to dress, bathe, and groom self, cook and prepare food, can do general cleaning, can do laundry, can shop, count and manage money, can drive and take public transportation." Dkt. #5, pp. 750-751.

Dr. Farmer opined that plaintiff had either no limitations, or only mild limitations, in areas of mental functioning, which did not appear significant enough to interfere with her ability to function on a daily basis. Dkt. #5, p. 751.

The ALJ found Dr. Farmer's opinion persuasive because it was internally consistent and also consistent with the medical evidence, which showed little objective evidence of any severe mental impairment, as well as the fact that plaintiff did not allege a severe mental impairment. Dkt. #5, p. 24.

The ALJ also found persuasive the opinions of two state agency doctors to the extent that they opined that plaintiff was able to perform light work. Dkt. #5, pp. 25-26, 98-100, 109-112.

Finally, the ALJ noted that plaintiff was generally able to manage her symptoms and engage in routine activities of daily living, albeit with some limitations. Dkt. #5, p. 25.

Thus, "[w]hile the ALJ could have provided a more robust discussion of [Dr. Ellis's] opinion, the Court concludes that it was not improper when reviewed in context of the ALJ's decision in its entirety." *Ernest S. v. Comm'r of Soc. Sec.*, 1:22-CV-00509-EAW, 2023 WL 5738449, at *6 (W.D.N.Y. Sept. 6, 2023) (citing *Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022) (holding that if an ALJ commits procedural error by failing to explain how it considered the supportability and consistency

of medical opinions in the record[,] the court could affirm if a searching review of the record assures [the Court] that the substance of the [regulation] was not traversed") (internal quotation marks omitted)).

It is clear from the Court's complete reading of the ALJ's decision that he found Dr. Ellis's opinions unpersuasive, in part, because they lacked objective support, which is an appropriate consideration. *Id.* (citation omitted).

The ALJ also noted that Dr. Ellis's opinions were in the form of check-box, fill-in-the-box forms, which this Court has observed are of "limited evidentiary value." *Koerber v. Comm'r of Soc. Sec.*, Case # 6:19-cv-1070-DB, 2020 WL 1915294, at *5 (W.D.N.Y. April 20, 2020) (citations omitted).

Further, the ALJ was entitled to rely on the opinions of both examining and non-examining state agency doctors in formulating the RFC, which he did. *Id.* at *6. *See also Joseph M. v. Comm'r of Soc. Sec.*, 23-CV-0369-LJV, 2024 WL 5247704, at *6 (W.D.N.Y. Dec. 30, 2024) ("The opinion of a non-examining source may override that of an examining source, even a treating source, provided the opinion is supported by evidence in the record.") (citation and internal quotation marks omitted).

In fact, no medical source other than Dr. Ellis opined that plaintiff's heart condition and/or obesity warranted severe restrictions or precluded her from performing light work. *See id.* ("Thus, the record shows that no other treating or examining source

provided an opinion that Plaintiff was disabled due to his spinal impairment, and Dr. Bennett stood alone in his extreme opinion regarding Plaintiff's impairments and his ability to work.").

It is also well-established that an ALJ may properly reject a treating physician's opinion that a claimant is unable to work because that "is an ultimate legal issue reserved to the Commissioner." *Banks v. Comm'r of Soc. Sec.*, 20-CV-3867(EK), 2023 WL 5718757, at *5 (E.D.N.Y. Sept. 5, 2023) (citations and internal quotation marks omitted).

Finally, in formulating plaintiff's RFC, it was appropriate for the ALJ to consider plaintiff's ability to perform daily activities. *Joseph M.*, 2024 WL 5247704, at *7 ("Courts have found that the ability to do routine daily activities, like those that Joseph can perform, support[s] a finding of being able to do light work.") (citations omitted).

In sum, "[w]hen the record contains competing medical opinions, it is the role of the Commissioner, and not this Court, to resolve such conflicts." *Emmanuel G. v. Comm'r of Soc. Sec.*, 1:22-cv-06497-GRJ, 2024 WL 303849, at *4 (S.D.N.Y. Jan. 26, 2024) (citation omitted).[5]

---

[5] Plaintiff reliance on *Christopher B. v. Comm'r of Soc. Sec.*, 1:21-CV-01238 EAW, 2023 WL 110117 (W.D.N.Y. Jan. 5, 2023), to support her argument for remand is misplaced. There, the Court found that the ALJ had "cherry-picked" the record in finding certain medical opinions unpersuasive. *Id.* at *8. The ALJ in this matter did not cherry-pick the record, but he instead reviewed and acknowledged evidence that supported some of plaintiff's complaints, synthesizing the information to reach an RFC that he determined was appropriate. That plaintiff disagrees with his determination is not a basis for remand. *Laura K. v. Comm'r of Soc. Sec.*, 23-CV-641 (JLS), 2025 WL 339006, at *6 (W.D.N.Y. Jan. 30, 2025).

The Court thus concludes that the ALJ's decision was supported by substantial evidence.

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #7) is denied, and the Commissioner's motion for judgment on the pleadings (Dkt. #8) is granted.

The Clerk of Court is directed to close this case.

**SO ORDERED.**

DATED:   Buffalo, New York
         September 2, 2025

                                            **s/ H. Kenneth Schroeder, Jr.**
                                            **H. KENNETH SCHROEDER, JR.**
                                            **United States Magistrate Judge**